# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NICK JOHN MARMARAS** ) <br> 5101 River Road ) <br> Apt#507 ) <br> Bethesda, MD, 20816 ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **PANAGIOTIS MARAFATSOS** ) <br> 17309 Kurbank Blv ) <br> Encino CA, 91316 ) <br> ) <br> ) <br> **Defendant.** ) <br> ) <br> ) | **COMPLAINT** <br> **Civil Action No 1:18-cv-01236** <br> **Jury Demand** |

## COMPLAINT

Plaintiff, Nick John Marmaras ("Plaintiff" and "Marmaras"), brings this complaint in the United States District Court of the District of Columbia against Panagiotis Marafatsos, ("Defendant" or "Marafatsos") alleging as follows:

## INTRODUCTION

1. This is an action to recover damages for copyright violation, breach of contract, and breach of fiduciary duty.

1

# PARTIES

2. Plaintiff is an individual, having an address at 5101 River Road, Bethesda Maryland, 20816 Apt# 507. Marmaras is one of the two Members of King Greek LLC. Marmaras is suing individually and derivatively as a Member of the LLC.

3. Upon information and belief, Defendant Marafatsos, is an individual having an address at 17309 Kurbank Blv, Encino CA, 91316. As set forth in the facts described below Marafatsos is one of the two Members of King Greek LLC.

# JURISDICTION AND VENUE

4. This is an action for federal claim of seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, 501, 504 et seq. The action also asserts supplemental claims for breach of contract, and breach of fiduciary duty pursuant to the statutory and common law of California.

5. This Court has subject matter jurisdiction over the copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the state-law claims under 28 USC§ 1367(a).

6. Venue is proper within this judicial district under 28 USC §1391(b) because a substantial part of the events giving rise to the Plaintiff's claims transpired in the District of Columbia. The Operating Agreement of King Greek LLC between Marafatsos and Marmaras were negotiated and signed in the District of Columbia. Marafatsos travelled to Washington DC to speak with Marmaras on more than two occasions. Marafatsos sent the vast majority of

all written business communications regarding King Greek LLC, to Marmaras' business address in Washington DC.

## FACTS

7. On or about 1997 Marmaras started recording ideas for writing a book about his personal life story, pain and suffering. The recordings were a collection of handwritten notes and audio recordings made in cassettes.

8. In 2008 Marmaras contracted Dean Mitchel to produce a screen play based on Marmaras' personal life story using Marmaras' notes and recordings.

9. In 2009 Marmaras held a stage reading of the screen play in Hollywood, California.

10. One of the actors of the stage reading was Defendant Marafatsos.

11. Marafatsos approached Marmaras and offered Marmaras his assistance to turn the theater play script about Marmaras life into a movie.

12. Marafatsos proposed the creation of a California based Limited Liability Company, whereby Marafatsos and Marmaras would be partners, to use as the vehicle for the accomplishment of this goal.

13. Marafatsos insisted to use his lawyer Symeon Davis in connection with all legal matters of the Company.

14. King Greek LLC was organized on May 31, 2011 under the laws of the state of California whereby Marmaras had 60% of membership interest and Marafatsos had 40% of membership interest.

15. On May 31, 2011 Marmaras and Marafatsos entered into an agreement titled "Limited Liability Company Agreement" ("Agreement") prepared by Symeon Davis.

16. The Agreement included among other provisions that (a) all day-today decisions and management of the Company are to be made by Marmaras and Marafatsos equally, (b) each Member of the Company has a fiduciary duty to each other and the LLC to act in good faith and (c) complete and accurate books of account of Company's affairs were to be maintained.

17. Since creation of the company, Marafatsos took upon himself to maintain complete and accurate books of account of Company affairs as required by the Agreement.

18. Marafatsos would repeatedly request money from Marmaras to cover company expenses, including legal fees, California State franchise taxes for the company, LLC annual registration fees, travel expenses of Marafatsos (so Marafatsos could allegedly meet with potential investors) as well as dining and entertainment expenses for the alleged investors.

19. Marmaras accepted to pay the initial operating expenses provided that Marafatsos would reimburse him for the 40% of the expenses that Marmaras would pay, which corresponded to Marafatsos by virtue of his 40% membership interest.

20. Marafatsos never contributed any money towards company expenses.

21. As time went by and Marafatsos made no progress whatsoever to advance the purpose of the Company, Marmaras pressured Marafatsos to pay him back the loan Marmaras gave to Marafatsos by paying 40% of the Company expenses.

22. In response to this request, Marafatsos offered Marmaras to give to Marmaras 20% of Marafatsos' interest in the Company.

23. Marmaras accepted but Marafatsos kept on finding excuses to delay the legal transfer of the additional 20% membership interest to Marmaras.

24. In 2012 King Greek LLC entered into a work for hire Agreement with Ramsay Seikaly according to which Seikaly was to adapt Marmaras' theater play script into a movie script assigning any and all intellectual property rights in connection with the script to King Greek LLC.

25. The script depicted the personal life pain and suffering of the 83 year- old Marmaras.

26. Marmaras again paid all expenses in connection with the work for hire Agreement with Ramsey Seikaly.

27. On three separate occasions Marmaras introduced to Marafatsos individuals that were interested in financing the production of Marmaras life story into a movie.  On each of these three occasions Marafatsos approached the individuals without Marmaras knowledge and try to divert their attention and financial resources to projects completely unrelated to Marmaras and King Greek LLC.

28. Marafatsos continued not to introduce Marmaras to any potential investor to advance the purposes for which King of Greek LLC was founded.

29. Marmaras pressured Marafatsos to give a detailed account of the company expenses and receipts that such expenses had been paid.

30. Marafatsos began to ignore Marmaras phone calls and efforts to participate in the Management of the company.

31. Marafatsos repeatedly ignored all of Marmaras efforts to collect the loan Marmaras made to Marafatsos by paying Marafatsos share of company expenses or transfer the additional 20% of Marafatsos share to the Company as he had promised.

32. On or about 2016 Marmaras found out that Marafatsos had acquired money for Marmaras for Company expenses under false pretenses.

33. Marafatsos never paid registration dues of the LLC.

34. Marafatsos never paid the franchise tax for the LLC, which with the penalties and interests exceeds is currently exceed $12,000.

35. Without consulting with Marmaras, Marafatsos registered the script Seikaly produced with the Writers Guild under Marafatsos name without including King of Greek LLC or Marmaras in the registration certificate.

36. Despite Marmaras' repeated requests Marafatsos refused to give any account to Marmaras about the management of the company and company expenses or copies of the required books and refused to produce any evidence regarding his alleged meetings with potential investors for the purposes of the Company.

37. Marafatsos did not maintain complete and accurate books of account of Company's affairs.

38. Marafatsos has not been consulted by Marafatsos concerning any aspect of the business.

39. As a result of Marafatsos' actions Marmaras has had no voice in the management and operation of the Company and has been completely frozen out of the business despite his substantial equity of 60% therein.

40. It was the reasonable expectation of Marmaras that he would have a voice in the management and operation of the business of the Company.

41. Relying upon the said reasonable expectation as well as the false pretenses of Marafatsos Marmaras has devoted considerable resources.

42. Marmaras has been oppressed by the harsh and vicious actions of Marafatsos particularly by Marafatsos denying Marmaras' copyright interest on the script depicting Marmaras' own personal life story, pain and suffering.

43. As a result of Marafatsos' actions Marmaras has suffered considerable harm.

## COUNT I

### Copyright Infringement

44. Marmaras repeats and realleges each and every allegation contained in paragraphs 1 through 43 of the complaint and further alleges the following:

45. The Agreement between Seikaly and King Greek LLC specifically states that the work performed by Seikaly is work for hire for the benefit of King Greek LLC.

46. By virtue of the Operating Agreement Marmaras has 60% interest in the script produced by Seikaly and is the rightful owner of this copyright interest.

47. Marafatsos, by registering the script Seikaly produced as work for hire for King Greek LLC exclusively under his name, and not under the name of King Greek LLC, Marafatsos copied and used the copyrighted work without the owner's permission, work that depicts the personal life, the pain and suffering of the 83 year old Plaintiff Marmaras.

48. The foregoing actions constitute infringement of Marmaras' copyright interest in the script under 17 U.S.C. § 501(a)–(b).

49. As a direct and proximate result of the foregoing acts, Marmaras has sustained and will continue to sustain substantial immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Marafatsos will continue to infringe Marmaras rights in his copyrighted work.  Marmaras is entitled to preliminary and permanent injunctive relief.

50. As a direct and proximate result of the infringement by Marafatsos, Marmaras is entitled to damages in the amount of $150,000 under 17 U.S.C.§504.

51. Marmaras further is entitled to recover attorney's fees and full costs pursuant to 17 U.S.C.§505.

## COUNT II

### Breach of Contract

52. Marmaras repeats and realleges each and every allegation contained in paragraphs 1 through 51 of its complaint and further alleges the following:

53. Marafatsos breached the Agreement by completely freezing Marmaras out of the business of the Company, therefore denying Marmaras' right to the Management of the Company, despite Marmaras' substantial equity therein.

54. Marafatsos breached the Agreement by failing to maintain complete and accurate books of account of Company's affairs.

55. Marafatsos breached the Agreement by failing to discharge his duties in good faith as provided in section 5.4 of the Agreement by: (a) ignoring Marmaras phone calls and text messages requesting a progress update for the Company and examination of the records of the Company including payment of expenses; (b) requesting money to pay company expenses including fees and taxes on behalf of the LLC and failing to make such payments, (c) not furthering the business purpose of the company, (d) not assuming responsibility for the 40% of the company loss as agreed with Marmaras, and subsequently by not transferring the additional 20% of the Company membership interest to Marmaras and by (e) registering a script with the Writers Guild of the life story of Marmaras without including Marmaras' name in the registration. Those were conscious and deliberate act, which unfairly frustrated the agreed common purposes and disappointed the reasonable expectations of Marmaras thereby depriving Marmaras of the benefits of the agreement.

56. All of the foregoing conduct constitutes a breach of contract which has resulted in damages to Marmaras. Marmaras has been injured by financial loss, loss of business, loss of

reputation, and inability to utilize King Greek LLC as a vehicle to attract potential investors to raise money and further the purposes of the company. Marmaras seeks compensatory damages for out of pocket expenses, loss of profits and reputation in the amount of $100,000. Marmaras also seeks interest on all damages, attorney fees and costs as well together with such additional and further relief as may be proven at trial.

## COUNT III

### Breach of Fiduciary Duty

57. Marmaras repeats and realleges each and every allegation contained in paragraphs 1 through 56 of his complaint and further alleges the following:

58. Since the creation of the Company Marafatsos has taken advantage of Marmaras' trust and confidence.

59. By engaging in the actions stated in paragraphs 1through 56 Marafatsos has breached the fiduciary duty he owned to Marmaras as a Member and Manager of King of Greek LLC.

60. All of the foregoing conduct constitutes a breach of fiduciary duty which has resulted in damages to Marmaras. Marmaras has been injured by financial loss, loss of business, loss of reputation, and inability to utilize King Greek LLC as a vehicle to attract potential investors to raise money and further the purposes of the company. Marmaras seeks compensatory damages for out of pocket expenses, loss of profits and reputation in the amount of $70,000. Marmaras also seeks interest on all damages, attorney fees and costs as well together with such additional and further relief as may be proven at trial.

**WHEREFORE**, Marmaras respectfully requests this Court to enter judgment against Defendant, and hereby award Marmaras:

A. Compensatory damages, damages for out of pocket expenses, loss of profits and reputation in the amount of $320,000;

B. Dissolution of King Greek LLC;

C. Injunctive relief preventing Marafatsos from claiming any ownership of the intellectual property right associated with screen play or theater play in connection with Marmaras life story;

D. A ruling that Marmaras is the sole and rightful owner of any Intellectual Property Right in connection with the screen play produced by Ramsey Sakaly depicting Marmaras' personal life story;

E. Pre-judgment and post judgment interest as provided by law;

F. Costs of prosecuting this lawsuit, including reasonable attorney's fees; and

G. Such other and further relief that this Court deems appropriate.

Respectfully submitted on behalf of the Plaintiff by:

THIS, the 26th day of May, 2018

/s/ Athina Balta
D.C. Bar No. 1019451
Athina Balta Law Group PLLC
1775 Eye Street, N.W. Suite 1150
Washington, D.C. 20006
Tel. (202)-587-5689
Fax (202)-587-5610
Email:ab@ablawgroupdc.com
Attorney for the Plaintiff